**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OUR CHILDREN'S EARTH
FOUNDATION, et al.,

      Plaintiffs,                        No. C 04-2132 PJH

    v.                                 **ORDER**

U.S. ENVIRONMENTAL PROTECTION
AGENCY, et al.,

      Defendants.
_____/

       The U.S. Environmental Protection Agency ("EPA")'s motion for judgment on the pleadings and the parties' various motions for summary judgment came on for hearing on May 11, 2005 before this court. Plaintiffs Our Children's Earth Foundation and Ecological Rights Foundation appeared through their counsel Christopher Sproul and Michael Graf. Defendant EPA appeared through its counsel Eileen McDonough and Pooja Parikh. Intervenor Association of Metropolitan Sewerage Agencies ("AMSA") appeared through its counsel David Burchmore, and intervenor Effluent Guidelines Industry Coalition ("EGIC") appeared through its counsel Fredric Andes.

       Having read the papers, including the brief of amicus curiae Waterkeeper Alliance, Inc., and carefully considered the relevant legal authority, the court GRANTS IN PART and DENIES IN PART EPA's motion for judgment on the pleadings, DENIES plaintiffs' motion for summary judgment, and GRANTS defendants' and intervenors' motions for summary judgment, for the reasons that follow.[1]

---

[1] Pursuant to Civ. L.R. 7-13, this order may not be cited except as provided by Civ. L. R. 3-4(e).

## BACKGROUND

This is an action brought under the Clean Water Act ("CWA"), 33 U.S.C. § 1251(a) et seq., and the Administrative Procedures Act ("APA"), 5 U.S.C. § 704.  Plaintiffs assert that the EPA has failed to comply with provisions of the CWA and the APA concerning its regulation of effluent emissions (the discharge of pollutants into water).

The CWA requires the EPA to review its effluent guidelines annually, and to revise them "if appropriate."  33 U.S.C. § 1314(b).  The CWA also mandates that the EPA publish a plan every two years that announces its schedule for performing this annual review and the schedule for rulemaking concerning any guidelines that are to be revised.  33 U.S.C. § 1314(m)(1)(A).  This biennial plan must also identify categories of sources that discharge toxic or other non-conventional pollutants for which no guidelines currently exist, and provide a schedule for guidelines to be issued for those sources, with final action required within three years.  33 U.S.C. § 1314(m)(1)(B).

Finally, the CWA requires the EPA to conduct a review every five years of the current effluent limitations and to ensure that they reflect appropriate levels of pollution based on the best available technology economically achievable and the best conventional pollutant control technology.  33 U.S.C. § 1311(d).  If they do not, the EPA must revise the effluent limitations in accordance with the guidelines set forth at 33 U.S.C. § 1311(b)(2).

In September 2004, the EPA published the results of its 2004 review of the effluent guidelines and limitations, along with a schedule for the 2005 review and proposed changes to the effluent limitation guidelines.  Graf Decl. Exh. 1 ("2004 EGP," at 69 Fed. Reg. 53705 (Sept. 2, 2004)).  These reviews combine the effluent limitations imposed along with the guidelines suggested, and are known as "effluent limitations guidelines," which are promulgated in the effluent guidelines plan.  The EPA also included revisions to two guidelines, added two new categories for which guidelines may be promulgated, and proposed a rulemaking schedule for the promulgation of guidelines for the new categories.

Plaintiffs filed suit, claiming: 1) that the EPA has failed to perform its mandatory duty to

conduct an annual review of all effluent guideline limitations; 2) that the EPA has failed to conduct its five-year review of the effluent limitations in relation to the best available technology for reducing pollution; 3) that the EPA has failed to issue timely final effluent guideline plans; and 4) that the EPA has failed to publish a proper final biennial plan.

Specifically, plaintiffs claim that the 2004 EGP sets forth a plan that identifies those industries with the highest risk of water pollution in the categories that are already established, and provides effluent guidelines only for those categories. Plaintiffs claim that the 2004 EGP does not identify other sources of water pollution among existing categories or identify new industries that are not yet regulated, and also fails to set national standards for any industry determined to be a "subcategory" of an already-regulated industry. Finally, plaintiffs claim that the 2004 EGP does not set a schedule for completing effluent guidelines for new industries, and has instead only set a schedule for commencing guideline promulgation.

On August 11, 2004, the court granted summary judgment in favor of the EPA on the third cause of action, finding that the EPA timely issued its biennial plan and was not required to issue that plan in conjunction with the calendar year or the annual report. The EPA brings a motion for judgment on the pleadings, and in addition, all parties have filed cross-motions for summary judgment on the remaining causes of action.

**DISCUSSION**

As discussed at the hearing, the procedures by which these motions were filed was somewhat disorganized, with parties responding to arguments raised in the 12(c) motion in their summary judgment motions, and parties filing numerous motions and cross-motions in subsequent responsive briefs. To streamline matters, this order is organized instead by the legal issues raised as outlined by the court at the hearing.

A.  Legal Standards

Judgment on the pleadings under Fed. R. Civ. P. 12(c) is appropriate after an answer has been filed and the complaint fails to state a cause of action upon which relief can be granted. See, e.g., Smith v. Nat'l Steel & Shipbuilding Co., 125 F.3d 751, 753 (9th Cir. 1997).

3

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

> B.  Jurisdiction
>
> > 1.  Mootness

The EPA argues that this dispute is moot because it has already issued the 2004 EGP. The cyclical nature of the EPA's obligations under the CWA, however, render them "capable of repetition, yet evading review." This exception to the mootness doctrine applies when "1) the duration of the challenged action is too short to allow full litigation before it ceases; and 2) there is a reasonable expectation that the plaintiffs will be subject to it again." Biodiversity Legal Foundation v. Badgley, 309 F.3d 1166, 1173-74 (9th Cir. 2002) (Dept. of Interior's failure to comply with requirements to list endangered species on annual listings). Here, the short duration of time permitted for the EPA's annual and biennial reports, coupled with the EPA's ongoing obligation to review and revise regulations and issue reports, warrants the application of this exception to the mootness doctrine.

> > 2.  Ripeness

The EPA argues that the dispute is not ripe for review under the APA, because the 2004 effluent guidelines review and plan cannot be considered "final agency action" as required by the APA and Norton v. Southern Utah Wilderness Alliance, 124 S. Ct. 2373 (2004).

At the hearing, the parties' arguments whether plaintiffs had in fact asserted an APA claim in this action were unclear. Plaintiffs claimed that they were primarily proceeding under the CWA claims, but in the alternative, if the court did not find jurisdiction under the CWA to review the EPA's non-discretionary actions, the court could also proceed under the APA. However, the court here finds that it has jurisdiction to review the EPA's non-discretionary actions, and furthermore, notes that the amended complaint in this action does not in fact allege any claims under the APA. The court thus declines to reach any questions concerning

the applicability of the APA in this case.

3. Standing

EGIC challenges plaintiffs' standing to proceed in this lawsuit.  For the organizational plaintiffs here to show standing, each organization must show that 1) its members would otherwise have standing to sue in their own right; 2) the interests in the lawsuit are germane to its mission; and 3) neither the claim nor the relief requires the participation of individual members themselves.  Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000) (citations omitted).  For the organizations' members to show standing, they must show 1) that they have suffered an injury in fact, 2) that there is a causal connection between the injury and the conduct at issue, and 3) that it is likely that the injury will be redressed by a verdict in their favor in this lawsuit.  Friends of the Earth, Inc. v. Laidlaw Environmental Serv., 528 U.S. 167, 180-81 (2000).

Plaintiffs are correct that they are alleging "procedural injury" based on the EPA's alleged failure to promulgate an EGP that complies with the CWA.  To show standing to assert a procedural injury, plaintiffs must demonstrate that "the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 573 n. 8 (1992).

Plaintiffs provide declarations from their members that show that many of them enjoy engaging in water-related activities, and their enjoyment has been hampered by pollution from industries that should have been regulated by the EPA.  Other members are hampered in their ability to teach their children about marine life, are hampered in their enjoyment of the coastline and coastal marine life, and are unable to eat seafood because of the EPA's actions.  See generally Evenson Decl., Harty Decl., Parrott Decl.

EGIC claims that these allegations do not set forth interests sufficiently concrete to warrant a finding that the plaintiffs' members have suffered an injury in fact.  However, plaintiffs' members can demonstrate the existence of an injury in fact by showing that they have "an aesthetic or recreational interest in a particular place . . . and that that interest is

1  impaired by a defendant's conduct." Ecological Rights Foundation, 230 F.3d at 1147
2  (citations omitted).  Here, plaintiffs' members have provided specific facts showing their
3  aesthetic and recreational interest in clean water and clean water habitats.  See, e.g.,
4  Evenson Decl. ¶ 3 (member of plaintiff organization Environmental Rights Foundation); Harty
5  Decl. ¶¶ 3-7, 13, 17, 18 (member of plaintiff organization Our Children's Earth Foundation);
6  Parrott Decl. ¶¶ 2-5, 15, 16, 18, 19 (member of Our Children's Earth).  This is sufficient to
7  demonstrate an injury in fact for both plaintiffs.  Id. (finding standing for individual members
8  who use the affected areas and would find the aesthetic and recreational value of those areas
9  impaired by defendants' actions), citing Laidlaw, 528 U.S. at 181-82; Cantrell v. City of Long
10 Beach, 241 F.3d 674, 681 (9th Cir. 2001) ("To allege a legally protected, concrete aesthetic
11 interest, a plaintiff must show merely that the challenged action affects his aesthetic or
12 ecological surroundings").

13         Similarly, because plaintiffs have properly produced evidence supporting their claims
14 of aesthetic injury, they have shown the necessary causal link between their injuries and the
15 EPA's procedural actions.  "The person who has been accorded a procedural right to protect
16 his concrete interests can assert that right without meeting all the normal standards for
17 redressability and immediacy."  Lujan, 504 U.S. at 572 n. 7.  Therefore, plaintiffs' members
18 have standing to proceed on this claim, even if changing the procedural rules might not directly
19 affect pollution levels in the waterways they use and enjoy.  Cantrell, 241 F.3d at 682.

20         Thus, because plaintiffs' members have adequately demonstrated standing, and
21 because EGIC does not dispute that this litigation is important to the organizational plaintiffs'
22 mission or that individual plaintiffs are not needed to participate in this action, the
23 organizations have standing to proceed in this case.

24         C.     Appellate Court Jurisdiction

25         Next, the EPA argues that this court does not have jurisdiction over this dispute under
26 the CWA.  This case arises under a claimed violation of 33 U.S.C. § 1314 and 1311.  The
27 CWA vests exclusive jurisdiction over any claim arising under §§ 1311, 1312, 1315, and 1345
28

in the appellate courts. 33 U.S.C. § 1369(b)(1)(E).  See, e.g., Environmental Protection Information Ctr. v. Pacific Lumber Co., 266 F.Supp.2d 1101, 1109 (N.D. Cal. 2003) (explaining regulatory structure of CWA).  The appellate court, however, cautions that its jurisdiction under § 509 should be interpreted narrowly.  League of Wilderness Defenders v. Forsgren, 309 F.3d 1181, 1190 n. 8 (9th Cir. 2002).

Plaintiffs argue that the Ninth Circuit has ruled that its original jurisdiction is limited only to the CWA sections specifically listed in § 1369, of which § 1314 is not.  Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1310 (9th Cir. 1992).  However, for claims arising under § 1314, even though that section is not specifically listed in § 1369, jurisdiction vests in the appellate courts as well, due to the intertwined nature of sections 1311 and 1314.  E.I. du Pont de Nemours and Co. v. Train, 430 U.S. 112, 127-128, 137 (1977) (approving of EPA's combined effluent guideline limitations reports, and finding that because § 1311 was drafted specifically to be enacted through regulations set forth in § 1314, the exclusive remedy for violations of § 1314 is before the appellate courts as well; it would be "truly perverse" to give the appellate courts power to review specific permit applications without also giving them the "power of direct review of the basic regulations governing those individual actions.").  See also Waterkeeper Alliance, Inc. v. U.S. EPA, 399 F.3d 486, 511-524 (2d Cir. 2005) (appellate court conducting review of effluent guideline limitations under § 1314 in the first instance); P.L. 95-217 § 73 91 Stat. 1609 (legislative history of CWA § 1314, indicating that appellate courts were to review EPA's compliance with the administrative requirements of the effluent guidelines and limitation requirements).  Cf. Longview Fibre, 980 F.2d at 1310 (finding that § 1369 did not cover 33 U.S.C. § 1313, a separate section of the statute, which is not at issue here).

The appellate court's jurisdiction, though, extends only to a substantive review of the appropriateness of the guidelines actually promulgated, and not to the threshold question of whether the statutory requirements of the CWA have been met.  Under the CWA, while the appellate court has jurisdiction over the substance of the decisions made, the district court

1 continues to determine whether the agency has discharged its non-discretionary duties under
2 the statute.  33 U.S.C. § 1365(a)(2) (gives citizens right to file suit "where there is alleged a
3 failure of the Administrator to perform any act or duty under this chapter which is not
4 discretionary with the Administrator"); see also Alaska Center for the Environment v. Browner,
5 20 F.3d 981, 983 (9th Cir. 1994).

6 Therefore, to the extent that plaintiffs seek a ruling on the question whether the EPA has
7 complied with its non-discretionary duties under the CWA, those questions are properly
8 before this court.  However, pursuant to section 1369 and Du Pont, this court is unable to
9 reach any questions that plaintiffs raise concerning the substance of the regulations that the
10 EPA has issued.  The court thus GRANTS IN PART and DENIES IN PART the motion for
11 judgment on the pleadings, and limits its review solely to the question of whether the EPA
12 discharged its mandatory duties under the CWA.  Plaintiffs will not be permitted to bootstrap a
13 review of the substantive elements of the EPA's decision in violation of 33 U.S.C. §
14 1365(a)(2) and § 1369(b)(1)(E).

15     D.    Mandatory Duties

16 With questions about the scope of the court's jurisdiction now resolved, the court turns
17 to the central question at issue in this case – whether the EPA properly discharged its duty
18 under the CWA in promulgating the 2004 EGP.

19 Under the CWA, the EPA is required to 1) "revise, if appropriate" the effluent limitations
20 guidelines currently in place at least once a year, 33 U.S.C. § 1314(b); 2) publish every two
21 years a plan that establishs a schedule for the annual reviews, identify categories of sources
22 for which no guidelines currently exist, and establish a schedule for the promulgation of new
23 guidelines for those new categories of sources, 33 U.S.C. § 1314(m); and 3) review at least
24 every five years the limitations promulgated under § 1314(b) and "if appropriate," revise them
25 pursuant to standard procedures in subsection(b), 33 U.S.C. § 1311(d).

26 The 2004 EGP is intended to serve as the annual review under § 1314(b), the biennial
27 plan under § 1314(m), and the five-year review under § 1311(d) as well.  69 Fed. Reg. at
28

8

53705, 53707. The parties agree that the 2004 EGP moves away from the technology-based plans previously promulgated under a prior consent decree and this year, is based instead on a risk/hazard assessment methodology. This year, the EPA performed a first-level screening of all the previous effluent guideline categories, selected the categories it determined posed the most significant risk for water pollution, and promulgated guidelines only in those selected categories. See, e.g., 69 Fed. Reg. at 53710-12. The EPA also identified only two categories for which no guidelines currently existed, and two categories for which the guidelines might be modified. The EPA did not examine any other categories. The EPA also admits that it did not conduct a technology review of the 450 categories and subcategories at issue. Plaintiffs argue that the EPA has, accordingly, failed to discharge the EPA's mandatory duties under the CWA.

The EPA is correct, however, that under § 1314(b) and § 1311(d), they need only review the guidelines previously promulgated, and revise them only if revisions are deemed "appropriate." This language thus grants broad discretion to the EPA to determine how it wishes to conduct the annual review. See, e.g., Norton, 124 S. Ct. 2373, 2380 (2004) (statute can require agency to act but when act is left to agency's discretion, the court cannot specify what particular type of action must be taken). Furthermore, in doing so, the EPA is not constrained by the factors listed in § 1314(b)(2). The plain language of the statute indicates that the factors applied only to the regulations to be promulgated back in 1972, and not to the review or revisions subsequently made. Similarly, the EPA need only conduct a "review" of the effluent limitations every five years, and need only comply with the standards set forth in § 1311(b) if revision is found to be appropriate.

The plain language of § 1314(m) also makes clear that the EPA is not required to perform a technological review for all 450 categories and subcategories of effluent guideline limitations in the biennial report. The statute only requires that the EPA establish a schedule for the annual review, that new categories be identified, and that a schedule for promulgating rules for the newly-identified categories be proposed.

1  EPA has met all the requirements for the annual guideline review, biennial report, and
2  five-year limitations review.  Therefore, the EPA's mandatory duties under § 1314(m) have
3  been fully discharged.

4  At the hearing, it became evident that plaintiffs recognize that the EPA has complied at
5  some basic level with these requirements, and they object to the method by which the EPA did
6  so, arguing that it is contrary to the purpose of the CWA to replace a technology-based review
7  with a hazard-based review, and that the rules promulgated have the effect of exempting
8  certain categories of water pollution entirely from review.  Those questions, would be
9  answered by a substantive review of the 2004 EGP, which this court has no jurisdiction to
10 conduct.

11 E. Conclusion

12 Summary judgment on the question of whether the EPA has discharged its mandatory
13 duties under the CWA is GRANTED in favor of the EPA and intervenors, and DENIED as to
14 plaintiffs.  The motion for judgment on the pleadings is GRANTED IN PART and DENIED IN
15 PART, in that the court finds that its jurisdiction is limited to a review of the discharge of the
16 EPA's statutory duties and does not reach questions that would amount to a substantive
17 review of the 2004 EGP.

18 This order fully adjudicates the matters listed at nos. 63, 74, 87, 104, 105, and 113 on
19 the clerk's docket, and all other pending matters for this case.  The clerk is ordered to close
20 the file.

21 **IT IS SO ORDERED.**

22 Dated: May 20, 2005

23 _____
PHYLLIS J. HAMILTON
United States District Judge